JENNIE WILLIS, by next friend, Respondent, v. ST. JOSEPH RÂILWAY, LIGHT, HEAT AND POWER CO., Appellant.

Kansas City Court of Appeals, April 3, 1905.

1. PASSENGER CARRIERS: Personal Injury: Prima Facie Case: Vis Major: Evidence.   Where plaintiff's own evidence shows the operation of causes beyond the control of the carrier tending to produce the injury complained of, plaintiff, to make out a prima facie case, is generally required to prove actual negligence of the defendant as the efficient cause of the injury.

2. ——: ——: ——: ——: ——: Instruction. An instruction set out in the opinion does not on the facts come within the rule of *vis major*, and the fact that plaintiff was hurt while a passenger, by the sudden stopping of a street car makes a prima facie case, and an instruction set out in the opinion is approved.

3. ——: Instruction: Evidence.   An instruction should be predicated upon all the evidence bearing upon the issues to which it is directed, and a failure to do so makes it erroneous.

4. ——: ——: ——.   An instruction based in part on facts not shown in the evidence is properly refused.

5. ——: Personal Injury: Verdict: Excessive.   A verdict is held not to be excessive nor the result of passion or prejudice.

Appeal from Buchanan Circuit Court.—*Hon. H. M. Ramey*, Judge.

AFFIRMED.

*R. A. Brown* for appellant.

(1)   The court erred in giving on behalf of plaintiff instruction numbered 5, which is as follows:

"This instruction tells the jury that, if the plaintiff, while a  passenger upon one of  defendant's cars was thrown from the said car and injured on account of the sudden stopping thereof, then she is prima facie entitled to recover a verdict against the defendant."

We deny that this instruction properly declares the law applicable to the facts in  this case.  Gillespie v. Railway, 6 Mo. App. 557; Smith v. Railway, 32 Minn. 1 (18 N. W. 829) ; Booth on Street Railways (1 Ed.), p. 488; Clark v. Railway, 127 Mo. 197; Tuley v. Railway, 41 Mo. App. 432; R. R. v. Reeves, 10 Wall. 190; Livezy v. Philadelphia, 64 Pa. St. 106; Le Barron v. Ferry, 11 Allen 316; Whart. Neg., secs. 129, 661.

(2)   The court committed error in refusing to give instruction  numbered  three asked by the  defendant. Gray v. M'Donald, 28 Mo. App. 492; Koontz v. Kaufman, 31 Mo. App. 420; Stanfield v. Loan Association, 53 Mo. App. 600; 2 Ency. Pl. and Pr., sec. 6, p. 213.

(3)   If there was a fight upon defendant's cars at the time of the accident, and if the passengers thereon became excited and were jumping from the cars while in motion, and were crying out "fire," or "fight," or "stop the cars," then, undoubtedly, it was the  duty of the agent in charge of the cars to stop the same in the shortest time and space possible, having due regard for the rights and  safety  of the passengers thereon.  See authorities cited under point II, supra.

(4) The verdict of the jury was excessive.

*James W. Boyd, M. H. Craig,* for respondent.

(1)   Instruction numbered 5 given on behalf of the respondent conforms to the law as declared so many times by so many courts and law writers that its correctness can not possibly be doubted.   Lemon v. Chanslor, 68 Mo. 340, 1. c. 354; Hipsley v. Railway 88 Mo. 348, 1. c. 352 and 353; Furnish v. Railway, 102 Mo. 438, 1. c. 452.

The   counsel for the appellant is in error in stating that these alleged facts were disclosed by the evidence on the part of the plaintiff.   No such facts were disclosed by plaintiff's evidence.   Hence, his reason of fact fails; fails because his statement is against the record.   3 Commentaries on the Law of Negligence by Thomas, section 2766, page 231.

(2) The colored passenger did not even co-operate in producing the injury to plaintiff; but even if he had co-operated to that end, his co-operation would constitute no excuse nor defense in this case.   Benjamin v. Railway, 133 Mo. 274, 1. c. 291; Shearman and Redfield on Negligence, section 31; Browning v. Railway, 124 Mo. 55; Clark v. Railway, 127 Mo. 197; Sweeney v. Railroad, 150 Mo. 385, 1. c. 397.

(3)  "There is no question but that the degree of care required of street railway companies towards their passengers is the utmost care and diligence of very cautious persons.   Waller v. Railroad, 83 Mo. 608; Furnish v. Railroad, 102 Mo. 438; Sweeney v. Railroad, 150 Mo. 385, 1. c. 401; Lemon v. Chanslor, 68 Mo. 340, 1. c. 354; Hipsley v. Railway, 88 Mo. 352; Furnish v. Railway, 102 Mo. 438; O'Connell v. Railway, 106 Mo. 482; Waller v. Railway, 83 Mo. 608.

(4)   The court did not commit error in refusing to give instruction numbered 3, asked by the appellant.

5.   The court did not commit error in refusing to give instruction numbered 2 as asked by the appellant.

(6) The plaintff was severely injured. It seems un-
reasonable to claim that the amount of the verdict is
excessive.

BROADDUS, P. J.—The plaintiff, a minor under
12 years of age, on the 21st day of July, 1903, was a pas-
senger on one of the cars of defendant railway company
which was going north along South Sixth street in the
city of St. Joseph. The train consisted of two open
summer cars—a motor and a trailer car. As the cars
were passing over a certain viaduct in the street a negro
passenger upon the trailer assaulted the conductor in
charge of that car with a knife. Some of the passengers
cried out "fire," "fight," "stop the car," etc. The motor-
man in charge of the front car applied his brake and
then reversed his motor in attempting to stop. When
the power was reversed the fuse was blown out, which
caused a flash. There was much confusion among the
passengers. The car stopped suddenly, which had the
effect of throwing the plaintiff from her seat to the
ground, whereby she was severely injured.

The ground for recovery is based upon the negli-
gence of defendant in suddenly stopping said cars.
The defendant claims that its action was justifiable be-
cause it was done for the safety of the passengers. A
more particular statement of facts will be detailed fur-
ther along in the opinion. The principal controversy
arises over the giving of plaintiff's instruction, which
is as follows:

"The court instructs the jury, that if they believe
from the evidence in this case, that Jennie Willis is a mi-
nor about the age of 13 years, and that John H. Willis
was appointed as her next friend to institute and
prosecute this suit by the clerk of this court in vacation,
at or before the time the suit was instituted, and that the
defendant owns, operates and controls, and did at the
time herein afterwards mentioned, own, operate and con-
trol street car lines in the city of St. Joseph, Missouri,

and that one of said lines extended along Sixth street and to South St. Joseph, and that on or about July 21st, 1903, plaintiff became a passenger on one of defendant's cars, propelled by electricity, and that while she was such passenger, and that while said car was being run north on Sixth street not far from the viaduct, the defendants and servants in charge of said car carelessly and negligently, suddenly and with great and unusual force stopped said car and thereby threw the plaintiff out of said car onto the ground, whereby her arm was injured and broken at or near the elbow joint, then the jury will find for the plaintiff."

By this instruction the jury were told that, if the plaintiff while a passenger upon one of defendant's cars was thrown therefrom and injured on account of the sudden stopping of the same, she was prima facie entitled to recover against defendant.   It is admitted by defendant that the instruction, as a general rule, declares the law properly, but the contention is made that it is not applicable to the facts of this case for the following reasons, viz:   The evidence of plaintiff's own witnesses discloses the fact that the conductor in charge of the car had been assaulted and stabbed by a negro passenger; that he was bleeding profusely; that the passengers upon the two cars became greatly excited and were making outcries and jumping from the cars while in motion; and that such being the fact, it was the duty of defendant's agents in charge of the car to stop it in the shortest time and space possible, consistent with the safety of the remaining passengers.

It is stated by a law writer:   "When the plaintiff's own evidence shows the operation of causes beyond the control of a carrier, as the presence of *vis major* or tortious acts of a stranger tending to produce the accident, the plaintiff, in order to make out a prima facie case, will generally be obliged to go further and improve the actual negligence of the defendant as an operating and efficient cause, or that by the exercise of due dilgence

the accident might have been avoided." Booth on Street Railways, p. 488; Smith v. Railway, 32 Minn. 1; Gillespie v. Railway, 6 Mo. App. 557. And the rule is recognized though not applied in Clark v. Railway, 127 Mo. l. c. 210.

But we do not think the evidence introduced by the plaintiff tended to show that the tortious acts of the negro passenger tended to show, "the operation of a cause beyond the control of the carrier." Mr. Dix, one of plaintiff's witnesses, was asked to state with what suddenness and force the car was stopped. He answered: "Well, they were coming down the hill there, and some one back there hollered 'fight,' or something to that effect, and they stopped the car, and they stopped it with a sudden jar—they reversed it strong enough to burn out the motor box on the back end of it." And further on he stated: "When I heard them holler 'fight,' or 'fire,' or something or other, I raised up in my seat like this (indicating) and turned round and the force of the stop throwed me across the other seat in front of me. I saw the box back there and it burned out; also saw something or other fall off and I looked down and saw the little girl (referring to plaintiff) getting up." He also stated that the car was going at the rate of 8 or 10 miles an hour.

William Carson, another of plaintiff's witnesses, stated that he was standing on the rear end of the front car, and that "all at once there was a flash of fire came there; it was just about that far (indicating) from my face. I hollered out: 'Stop this car! This car must be on fire!' I thought everybody was burning up, so it stopped suddenly. . . . I hollered, 'stop the car' but the car was already still then." He was asked: "What was the first thing that attracted your attention?" To which he answered, in substance, that it was the blaze from the motor, at which time the plaintiff fell off of the car. Plaintiff's mother stated that

the first alarm which she heard was some one called out 'fire,' at which time her little girl fell off the car.

These were all the witnesses of plaintiff who testified as to the confusion on the car and as to the time when the passengers jumped off, except that about the time the car stopped the conductor came forward covered with blood and crying out "police." There was no cry of fire until the flash occurred, when the car stopped. Only one witness stated that he heard the cry of "fight" or "fire" just as the car stopped. So far as plaintiff's evidence went, it does not show any necessity for stopping the car in the violent and sudden manner described. And we think for another reason that plaintiff made out a prima facie case: There was no person on the track in peril whose safety required that such extraordinary precaution should have been employed as to disable the motive power of the cars; nor any obstacle on the track which threatened a collision or which demanded the most strenuous exertions to avoid danger to cars and passengers. If there was confusion among the passengers occasioned by the fight between the conductor and the negro passenger, which it is reasonable to suppose existed, the sudden stoppage of the train and the flash of fire from the motor certainly tended to aggravate the conditions and enhance the dangers. That there was a necessity for stopping the cars perhaps may be conceded, but it should have been accomplished in a reasonably prudent and speedy manner and not with such violence as to increase the hazard of the passengers. It was the duty of defendant to have acted so as to have avoided danger to its passengers and not to create a new source of peril.

The refusal of the court to give defendant's instruction number three is assigned as error. Said instruction ought not to have been given because it calls attention to defendant's evidence as to the manner in which

the car was stopped. This was not proper. An instruction should be predicated upon all the evidence bearing upon the issue to which it is directed. After stating the law correctly it contains the following: "The simple fact that the car, when the defendant's agents attempted to stop the same, may have *jerked or slowed up some,* having a tendency to cause persons *not holding to the car to be thrown forward,* would not authorize a recovery in the case, even, if on account of such stopping of the car, plaintiff fell therefrom and was injured." As there was evidence that the car did not merely *jerk and slow up some,* but jerked and stopped suddenly, and that passengers sitting in seats were thrown over an upon other seats, the instruction was one-sided and did not apply to the whole evidence on the issue.

Complaint is made to the action of the court in refusing defendant's eleventh instruction, which is as follows:

"If you believe from the evidence that there was a fight, or commotion upon defendant's cars at the time and place when and where plaintiff was injured, and that the passengers upon said car became excited and were stepping or jumping from said cars, while in motion, and that such passengers cried out 'fire,' or 'fight,' or 'stop the cars,' then it was the duty of the agents in charge of said cars if they saw or heard such commotion, and the cries of 'fire,' or 'fight,' or 'stop the cars,' and if they saw people jumping therefrom, to stop said cars in the shortest time and space possible, having due regard for the rights and safety of the passengers thereon."

The instruction was wrong because it was based in part on facts that were not shown. There was no evidence that any of the passengers jumped from the cars prior to the attempt of defendant to stop them, and one witness alone speaks of persons getting off while they were slowing down, and his evidence was somewhat indefinite in that respect. As there was no evidence that

prior to the moment when defendant began to stop its cars there were persons who were attempting to get off, there was no apparent necessity for the manner in which it was performed. The instruction was wrong for that reason, also.

Finally, it is insisted that the verdict is excessive. The evidence showed that the plaintiff's right arm was dislocated at the elbow and that what is called the knuckle of the elbow was fractured. It was the opinion of the surgeon who attended her that her arm had or would entirely recover from the effects of the injury, except that if she was in any way predisposed to rheumatism it would affect the elbow in damp weather. Other evidence was to the effect that she did suffer at times with rheumatism in the injured part. Plaintiff underwent considerable suffering. Under the facts we do not think we are justified in holding that the verdict was a result of passion or prejudice, or that it was excessive.

Cause affirmed. All concur.